UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARK M., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:21-cv-01505-TAB-JRS |
| | ) |
| KILOLO KIJAKAZI Acting Commissioner Social Security Administration, | ) ) ) |
| | ) |
| Defendant. | ) |

**ORDER ON PLAINTIFF'S REQUEST FOR REMAND**

**I.      Introduction**

Plaintiff Mark M. appeals the Social Security Administration's denial of his application for disability insurance benefits.  Plaintiff argues that the Administrative Law Judge provided no justification or reasoning for concluding that Plaintiff can even get to work, due to his agoraphobia causing panic attacks when leaving the house.  In addition, Plaintiff argues that the ALJ erroneously discredited Plaintiff's claims of subjective symptoms and that the ALJ failed to consider new, material evidence that was presented to the Appeals Council.  While the ALJ supported his reasoning for not finding additional limitations necessary related to Plaintiff's agoraphobia, the ALJ relied on erroneous reasoning to discredit Plaintiff's subjective symptom claims in relation to treatment, medication use, and daily activities, and that the lack of consideration of Plaintiff's 2020 medical records contributed to Plaintiff's improper evaluation of Plaintiff's subjective symptoms.  Therefore, Plaintiff's request for remand [Filing No. 14] is granted.

**II.     Background**

On September 6, 2019, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging his disability began on July 30, 2019. The SSA denied Plaintiff's claims initially and upon reconsideration. Following a hearing, the ALJ determined that Plaintiff was not disabled. The ALJ followed the SSA's five-step sequential process to determine if Plaintiff was disabled. Before reaching step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 30, 2019, the alleged onset date. At step two, the ALJ found Plaintiff had the following severe impairments: major depression, anxiety with agoraphobia, and panic disorder. [Filing No. 12-2, at ECF p. 19.] At step three, the ALJ concluded that Plaintiff did not meet or equal the severity of one of the listed impairments.

Before reaching step four, the ALJ determined Plaintiff's residual functional capacity, or his remaining ability to work despite his limitations. The ALJ concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels, with the following non-exertional limitations:

> [Plaintiff] is limited to work with one-, two-, or three-step instructions. He can have only occasional contact with coworkers. The claimant can have only occasional contact with the general public. He is limited to routine work that does not require changes or adaptations in work settings or duties more than once per month. The claimant cannot do jobs with production quotas mandating a specific number of pieces per hours, or have a down-the-line coworker depending on his productivity.

[Filing No. 12-2, at ECF p. 20.]

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. Finally, at step five, the ALJ considered Plaintiff's age, education, work experience, and RFC

2

before concluding that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including equipment cleaner, box bender, and furniture cleaner. [Filing No. 12-2, at ECF p. 25.]  Accordingly, the ALJ concluded that Plaintiff was not disabled.

## III. Discussion

Plaintiff argues that the ALJ provided no justification for the conclusion that Plaintiff can even get to work due to his severe and pervasive agoraphobia causing panic attacks when leaving his house, improperly discredited Plaintiff's subjective symptom claims, and failed to consider medical records from continuing psychotherapy in 2020.  The Court reviews the ALJ's decision to determine whether the ALJ's factual findings are supported by substantial evidence.  *See, e.g., Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings shall be conclusive if supported by substantial evidence." (Internal quotation marks omitted)).  "The court is not to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner.  Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled."  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations, quotation marks, and brackets omitted).

### A. RFC assessment

Plaintiff contends that the ALJ failed to adequately address his psychological symptoms and his daily functioning.  Plaintiff reasons that the ALJ "never explains the rationale behind his finding of the RFC, and particularly that [Plaintiff] would not have much greater psychiatric and behavioral limitations than he concluded." [Filing No. 14, at ECF p. 15.]  Plaintiff raises particular concern over the ALJ not accounting for his severe limitations associated with agoraphobia and claims that the ALJ provided no explanation as to why he found Plaintiff

3

nevertheless capable "of consistent attendance, to be punctual, and to be able to respond appropriately to coworkers and supervisors." [Filing No. 14, at ECF p. 15.] Plaintiff argues that these restrictions "were seemingly pulled out of thin air with no basis in the evidence[.]" [Filing No. 14, at ECF p. 15.]

The ALJ found Plaintiff had a severe impairment of anxiety with agoraphobia. However, Plaintiff claims the ALJ did not account for any limitations Plaintiff experiences because of his agoraphobia, which is characterized by the marked fear of using a car and being outside of his home alone. The record is replete with references to Plaintiff's fears of driving a car and being outside of his home. [Filing No. 12-7, at ECF p. 2, 6; Filing No. 12-2, at ECF p. 76.] He arrived at psychotherapy appointments with his mother in the car because he cannot drive a car alone. He cannot drive or shop alone due to panic episodes. [Filing No. 12-2, at ECF p. 51.] In addition, Plaintiff noted that when he has panic attacks, he has trouble breathing, feels like he is dying, and has an overwhelming feeling of hopelessness. [Filing No. 14, at ECF p. 16.] Plaintiff testified that he has panic attacks daily, even when he is at home, and he is more likely to have one when out of his house. [Filing No. 12-2, at ECF p. 79-80.] His treatment goal was to be able to leave his house and drive his car without panic attacks, but he was consistently noted to have made "no progress" at most sessions. [Filing No. 12-2, at ECF p. 34, 36, 38, 40, 42, 44, 46, 48, 50, 52, 54, 56, 58, 62, 64.]

However, the ALJ acknowledged these facts in his decision. The ALJ explained that the opinions from state agency psychologists adequately accounted for Plaintiff's difficulties going out and his reports of worry and intrusive thoughts. The ALJ expressly considered Plaintiff's intrusive thoughts, anxieties, and worries, as well as his agoraphobia. The ALJ directly stated Dr. Floyd F. Robison's opinion that Plaintiff had a marked fear of being outside the home alone

and avoided driving for fearing of developing panic like symptoms, which caused significant impairment in his occupational area of functioning. The ALJ found Dr. Robison's opinion only somewhat persuasive because Plaintiff was able to drive with someone else in the car, and his treatment records indicated he was able to leave his home. [Filing No. 12-2, at ECF p. 23.]

The RFC as assessed by the ALJ adequately accounts for Plaintiff's demonstrated psychological symptoms. While Plaintiff argues that the ALJ's decision does not offer any rationale as to why the mental limitations in Plaintiff's RFC accommodate his panic disorder with agoraphobia or why different limitations are not needed, Plaintiff sets forth no suggestion of other potential limitations that the ALJ supposedly ignored. So long as the ALJ identified supporting evidence in the record and built a logical bridge from that evidence to the ALJ's conclusion, the Court must affirm. *See, e.g., Jeske v. Saul* , 955 F.3d 583, 596 (7th Cir. 2020) ("Our role is to determine whether the ALJ applied the right standards and produced a decision supported by substantial evidence. The ALJ's explanation must enable us to meaningfully carry out that role." (Internal citation omitted)); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017) ("As long as the Appeals Council identified supporting evidence in the record and build a 'logical bridge from that evidence to its conclusion, we must affirm. This is true even if reasonable minds could differ about the ultimate disability finding.").

B. **Subjective symptom assessment**

Next, Plaintiff argues that the ALJ erroneously applied SSR 16-3p in assessing Plaintiff's symptoms. [Filing No. 14, at ECF p. 22.] The regulations describe a two-step process for evaluating a plaintiff's subjective symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain"; and second, the ALJ must

"evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017).

  The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. [Filing No. 12-2, at ECF p. 22.] In relation to Plaintiff's daily activities, the ALJ concluded that Plaintiff "appears to be independent in his activities of daily living, and is able to care for his seven-year-old grandson even on bad days." [Filing No. 12-2, at ECF p. 24.] Plaintiff argues that the critical difference between daily living activities and a full-time job is that in the former, an individual has more flexibility in scheduling, can get help from others when needed, and is not held to a minimum standard of performance. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). In addition, Plaintiff contends that the ALJ failed to consider the qualified way Plaintiff completed the referenced daily activities and the assistance required. Specifically, Plaintiff's girlfriend helps him care for his grandson; he can perform chores with help; his fiancée does the cooking and grocery shopping, but he helps with the laundry; his fiancée homeschools his grandson, but he helps when he can. [Filing No. 12-6, at ECF p. 15-16; Filing No. 12-2, at ECF p. 74-75.] As Plaintiff testified, he still cares for his grandson on his bad days when he otherwise cannot get out of bed, because "you don't stop being a parent." [Filing No. 12-2, at ECF p. 79.] Plaintiff presented evidence that the ALJ improperly characterized Plaintiff's ability to function in relation to his care of his grandson and downplayed the assistance he received in completing the referenced daily activities.

In addition, Plaintiff persuasively argues that the ALJ's analysis of his medication use—or lack thereof—is unfair and unsupported. The ALJ noted that Plaintiff was treated regularly with a psychologist and counselor but declined psychotropic medication. [Filing No. 12-2, at ECF p. 23.] The ALJ further noted: "Although it was noted that medication had been ineffective in the past, the claimant's unwillingness to even attempt this treatment for his more current symptoms indicates that they are not as severe as alleged." [Filing No. 12-2, at ECF p. 23.] The ALJ provides no further support for this significant conclusion. While it is true that Plaintiff declined psychotropic medication, the ALJ noted that Plaintiff had tried several medications with little efficacy. [Filing No. 12-2, at ECF p. 22.] Counselor Candice Due, LMHC, stated in her November 2020 opinion statement that Plaintiff had tried medications in the past, but experienced hallucinations, intense fear, agoraphobia, and thoughts of death. [Filing No. 12-7, at ECF p. 101.] The ALJ's decision completely omits this portion of Due's statement. SSR 16-3p specifically notes that an ALJ should consider that "an individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms." The ALJ provides no logical bridge to his assumption that Plaintiff's "unwillingness" to take medication indicates that his current symptoms are not as severe as alleged. The ALJ further claimed that Plaintiff had no treatment in 2020, though as discussed below, the facts show otherwise.

Finally, the ALJ also pointed out that Plaintiff discussed a desire to return to work with his counselor. [Filing No. 12-2, at ECF p. 24.] Plaintiff told Counselor Due that he "wants to be able to work but is afraid that he will have another 'break down' if he goes back to work." [Filing No. 12-7, at ECF p. 25.] However, there is no evidence Plaintiff ever actually looked for a new job. Moreover, merely discussing his financial struggles and concerns that he may have to work despite knowing it will increase his anxiety and depression is not inconsistent with Plaintiff's

7

disability claim.  *See Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2018) ("While a claimant's statements in applying for work following a disability claim might be relevant to her credibility when the statements undermine the basis of her claim, such is not the case here.  Persisting in looking for employment even while claiming to suffer from a painful disability might simply indicate a strong work ethic or overly-optimistic outlook rather than an exaggerated condition.  In any case, the ALJ here provided no support for his conclusion that looking for a new job was inconsistent with Ghiselli's disability claim.").  A job search or expression of an alleged "desire" to return to work is not equivalent to evidence that Plaintiff embellished or exaggerated his symptoms.  *See, e.g., Gerstner v. Berryhill*, 879 F.3d 257, 265 (7th Cir. 2018) (noting a job search alone is not evidence a claimant embellished her pain); *Ison v. Astrue*, No. 10 C 0711, 2012 WL 832983, at *9 (N.D. Ill. Mar. 12, 2012) ("Courts in this Circuit and others have acknowledged that a desire to work, by itself, should not be used as a negative credibility factor because a desire to work does not necessarily imply an ability to work.").

The Commissioner attempts to deflect Plaintiff's arguments on this issue by simply noting the highly deferential standard used to analyze an ALJ's credibility finding.  The Commissioner stated: "While the ALJ's reasoning is far from perfect, it does not require remand where, as there, the ALJ tied the limitations in his RFC assessment to the medical source opinions, including findings from state-agency psychologists Drs. Clark and Unveraw and examining psychologist Dr. Robison."  [Filing No. 15, at ECF p. 7.]  The Commissioner simply argues that the ALJ gave solid, substantiated reasons for giving more weight to these opinions than to Plaintiff's subject claims regarding his symptoms.  [Filing No. 15, at ECF p. 7-8.]

However, the Commissioner's response provides no tangible example of "solid, substantiated reasons" in the ALJ's decision.  The ALJ's decision is devoid of the necessary level

8

of articulation to demonstrate that the ALJ's reasoning forms an accurate and logical bridge between the evidence and result. It is not the role of this Court to reweigh the evidence. *See, e.g., Burmester*, 920 F.3d at 510. But it is this Court's role to ensure that the ALJ's decision is supported and reflects an accurate portrayal of the underlying facts and evidence. Thus, remand is appropriate here where the ALJ's consideration of Plaintiff's subjective symptoms reflects improper characterizations and the possibility of overlooked evidence.

### C. Consideration of new evidence

Finally, Plaintiff argues that the Appeals Council failed to remand Plaintiff's claim for additional review after receiving new and material evidence. [Filing No. 14, at ECF p. 29.] The additional evidence showed Plaintiff received mental health treatment in 2020, which Plaintiff argues supported his claims and elaborated on his difficulties with continued psychiatric limitations. The Appeals Council concluded that treatment notes from up to October 2020 "did not show a reasonable probability that it would change the outcome of the [ALJ's] decision." [Filing No. 12-2, at ECF p. 3.] However, as noted above, the ALJ specifically stated that "there was no treatment in 2020" as part of his justification for denying Plaintiff's request for benefits. [Filing No. 12-2, at ECF p. 24.] Plaintiff notes that the ALJ was notified that there were records of treatment from 2020, but they had not yet been received at the time of the hearing. [Filing No. 12-6, at ECF p. 63.] Thus, Plaintiff argues it was improper for the Appeals Council to deny review and reject additional new and material evidence that refuted the ALJ's reasoning. [Filing No. 14, at ECF p. 29.]

The SSA regulations state that the Appeals Council will review a case based on additional evidence if: (1) the additional evidence is new and material; (2) the evidence relates to the period on or before the date of the hearing decision; (3) there is a reasonable probability that

9

the evidence would change the outcome of the decision; and (4) there is good cause for failing to submit it earlier.  20 C.F.R. § 404.970.  The Appeals Council found no reason to review the ALJ's decision.  While the Appeals Council acknowledged receipt of records from LPS Behavioral Health dated through October 30, 2020, it concluded that the evidence did not show a reasonable probability that the 2020 treatment notes would have changed the outcome of the ALJ's decision.  [Filing No. 12-2, at ECF p. 3.]  Thus, the records were not exhibited.  [Filing No. 12-2, at ECF p. 3.]

The Commissioner argues that substantial evidence supported the Appeals Council's conclusion that the 2020 treatment notes would not have changed the outcome of the ALJ's decision.  [Filing No. 15, at ECF p. 8.]  Once again, the Commissioner argues that the ALJ's RFC assessment was well explained and based on medical opinions.  In addition, the Commissioner claims the 2020 treatment notes did not suggest that Plaintiff's condition worsened in 2020 to the extent that the ALJ would have imposed greater limitations.

Neither side provides any further citation or elaboration as to what information the 2020 treatment notes actually contained.  Thus, the Court is left to speculate, which it cannot do.  What the Court can do is look at the facts.  The facts show that the ALJ denied Plaintiff benefits in part because Plaintiff did not have any treatment in 2020, yet records exist indicating Plaintiff did have treatment in 2020.  On remand, the ALJ must consider any and all treatment records, including those from 2020.[1]

---

[1] The Court previously determined that remand is appropriate, thereby providing the ALJ the opportunity to properly consider these records.

10

## IV. Conclusion

While the ALJ considered Plaintiff's agoraphobia and anxiety in assessing his RFC, the ALJ's decision does not draw an accurate and logical bridge between the evidence—in particular, Plaintiff's subjective symptoms, medication, and treatment—and the ALJ's conclusion that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence of record. In addition, the failure to consider 2020 treatment notes raises additional concerns. Thus, for the reasons noted above, Plaintiff's request for remand [Filing No. 14] is granted.

Date: 5/9/2022

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email